UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **REGIONS BANK** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-1813** |
| **ASHTON J. RYAN, JR. AND PETER D. WEITZNER, INDEPENDENT EXECUTOR OF THE SUCCESSION OF MARTIN J. WEITZNER** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion to Dismiss or Stay Action, filed by defendant, Ashton J. Ryan Jr. (Doc. #10), is **GRANTED,** and this matter is **STAYED** pending arbitration.[1]

## BACKGROUND

On September 23, 2009, Ashton J. Ryan Jr. executed a promissory note for one million dollars in favor of Regions Bank, payable in full on September 22, 2010. That same day, Martin J. Weitzner executed a commercial guaranty in favor of Regions with respect to the promissory note in which he guaranteed full payment of Ryan's debt. The promissory note and commercial guaranty contain arbitration clauses and state that Ryan and Weitzner waive notices of demand, presentment for payment, protest, notice of protest, and notice of nonpayment.

---

[1] The Successions' Motion to Dismiss will not be addressed because it is an issue for arbitration.

Weitzner died on May 4, 2010.  On May 7, 2010, Peter Daniel Weitzner was appointed Independent Executor in the Succession of Martin J. Weitzner (the "Succession").[2]

Regions extended the maturity date of the promissory note twice after Weitzner's death: first to December 22, 2010, and subsequently to March 22, 2011.  On July 27, 2011, Regions filed this suit alleging that both Ryan and the Succession are in default for failure to make final payment of principal and interest on the note.  The Succession asserted a cross claim against Ryan seeking contribution and reimbursement for any amount paid to Regions.

Ryan filed a motion to dismiss or stay the action pending arbitration.  The Succession opposes Ryan's motion, arguing that it should not be ordered to submit to arbitration because there is no pending motion to compel arbitration or to stay the claims between the Succession and the other parties.

## ANALYSIS

**A. Arbitration**

The Federal Arbitration Act, 9 U.S.C. § 1, et seq., "embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 126 S.Ct. 1204, 1207 (2006).  In determining whether a dispute is referable to arbitration, the court must analyze whether an agreement to arbitrate exists and whether the claim at issue falls within the agreement:

> To ascertain whether the parties have agreed to arbitrate a particular claim, we must determine (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question falls within the scope of that arbitration agreement.  In view of the policy favoring arbitration, we ordinarily resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration. As a consequence, a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.

---

[2] Succession of Martin Weitzner, No. 2010-4711, Civil District Court for the Parish of Orleans, State of Louisiana.

2

Personal Security & Safety Systems v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002) (internal citations and quotations omitted). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." AT & T Techs., Inc. v. Commc'ns Workers of Am., 106 S.Ct. 1415, 1418 (1986). Unless the parties agreed otherwise, the court, not the arbitrator, must determine whether the parties agreed to arbitrate a particular claim. Id.

Further, pursuant to Louisiana Revised Statutes § 9:4202:

> If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

**B. The Arbitration Agreements**

Both the promissory note signed by Ryan and the commercial guaranty signed by Weitzner contain arbitration clauses with almost identical language.[3] Pursuant to the arbitration clauses:

> Except as expressly provided below, any controversy, claim, dispute or disagreement (any "Claim") arising out of, in connection with or relating to (1) Borrower's [Guarantor's] business relationship with Lender; (2) the performance, interpretation, negotiation, execution, collateralization, administration, repayment, modification, or extension of this Note or the loan [Guaranty or the Indebtedness]; (3) any charge or cost incurred pursuant to this Note or the loan [Guaranty or the Indebtedness]; (4) the collection of any amounts due under this Note or the loan [Guaranty or the Indebtedness]; (5) any alleged tort or other claim arising out of or relating in any way to this Note or the loan [Guaranty or the indebtedness], collateral under this Note [Guaranty or the indebtedness], or any account established pursuant to this Note [Guaranty]; (6) any breach of any provision of this Note [Guaranty]; (7) any statement or representation made to Borrower [Guarantor] by or on behalf of Lender; or (8) any of the

---

[3] The only difference between the two clauses is that the term "borrower" is used in the promissory note, and the terms "guarantor", "guaranty", and "indebtedness" are used in the commercial guaranty.

>foregoing arising out of, in connection with or relating to any agreement which relates to this Note or the loan [Guaranty or the Indebtedness] or any assignment of this Note or the loan [Guaranty or the Indebtedness], or any relationship created by or resulting from this Note or the loan [Guaranty or the Indebtedness], will be settled by binding arbitration under the Federal Arbitration Act ("FAA"). This agreement to arbitrate shall include any Claims involving Lender's officers, directors, employee, agents, representatives, contractors, subcontractors, affiliates, successors or assigns, and any such Claims against any of those parties may be joined or consolidated with any related Claims against Lender in a single arbitration proceeding.

Ryan invoked the arbitration clause in his Motion to Dismiss or Stay Action. The claims of all parties arise out of the promissory note and commercial guaranty, which contain substantially identical arbitration clauses. Weitzner's liability as guarantor is contingent upon Ryan's failure to repay under the promissory note. Therefore, the promissory note and commercial guaranty are "sufficiently intertwined" to require all claims to be arbitrated. See Regions Bank v. Weber, 53 So. 3d 1284, 1290 (La. App. 4 Cir. 2010). Pursuant to the national policy favoring arbitration, and to promote judicial economy and prevent inconsistent results, this matter is STAYED pending arbitration.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss or Stay Action, filed by defendant, Ashton J. Ryan Jr. (Doc. #10), is **GRANTED,** and this matter is **STAYED** pending arbitration**.**

New Orleans, Louisiana, this 29th day of November, 2011.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

4